UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 4:25-cv-01416

**Shangyou Jiayi Lighting Product Co., Ltd.,**
*Plaintiff,*

v.

**The Partnerships and Unincorporated Associations Identified in Schedule A,**
*Defendants.*

# ORDER AND OPINION

This is a "Schedule A" case in which a plaintiff sues defendants listed in a sealed attachment to the complaint for violating the plaintiff's intellectual-property rights. Here, defendants allegedly make and sell patent-infringing goods from China via online-sales platforms. Plaintiff moves ex parte for an order freezing defendants' money held by third-party providers, temporarily restraining sales of the accused products, and allowing expedited discovery and email service of process.

Such Schedule A cases can have an uncertain fit with the Federal Rules of Civil Procedure and due process. Although adversarial briefing would clarify the issues, the case and this motion appear to raise issues regarding the following:

- Service of process by email under Rule 4(f)
- Personal jurisdiction
- Proper joinder of defendants
- Fair notice to defendants and nonpublic court filings
- Binding nonparty platforms under Rule 65
- Likelihood of success on the merits
- Justification and equities of prejudgment asset restraint
- Rule 65 injunction bond for potential harm to defendants

The court examines each below.

## I. Service of process by email

Federal Rule of Civil Procedure 4(f) lays out the process for serving a party who is located in a foreign country. Such a person may be served in any of three ways:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

   (C) unless prohibited by the foreign country's law, by:

      (i) delivering a copy of the summons and of the complaint to the individual personally; or

      (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Plaintiff moves for an order under Rule 4(f)(3) authorizing service of process by email on defendants. Doc. 8. Plaintiff relies on district-court decisions authorizing email service on defendants in China. *Id.* at 3–5. Two circuits have now held that the Hague Convention, when it applies, prohibits service by email on defendants in China. The court agrees with that analysis.

### A. The Hague Convention is exclusive when it applies and does not allow email service in China

Rule 4(f)(1) refers to internationally agreed means of service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("the Hague Convention"). The Hague Convention is an international agreement among countries that aims to simplify and standardize the service of documents abroad. It provides multiple, alternative methods for serving process on a defendant based in a foreign country. *See id.* art. 2 (requiring a signatory to create a central authority to receive and execute requests for service of process—a process that may be slow or unsuccessful); *id.* art. 10 (allowing service by postal channels, judicial officers, or other competent persons in the destination country so long as that country does not object).

When the Hague Convention applies, a party must use its procedures for service of process. That is not optional: "compliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Because the Convention is a treaty, it displaces conflicting methods of service under the Supremacy Clause. *Id.* at 699; U.S. Const. art. VI. The Supreme Court has thus affirmed that the Convention specifies approved methods of service and preempts inconsistent methods of service wherever it applies. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017).

Rule 4(f) itself reflects that limit. Rule 4(f)(2) applies only if there is no internationally agreed means or if an international agreement allows unspecified other means. Fed. R. Civ. P. 4(f)(2). And Rule 4(f)(3) allows service by court-ordered means only if those means are not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). Each of Rule 4(f)'s paragraphs is an alternative, but the latter two refer internally to the scope of international agreement—echoing the Supreme Court's holding that the Hague Convention is exclusive where it applies.

The court agrees with the Second Circuit's recent conclusion that, where the Hague Convention governs service of process on a defendant in China, it prohibits service by email. *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 170–72 (2d Cir. 2025). The Hague Convention sets out a "closed universe" of permissible service methods. China objected to Article 10, and no other provision authorizes email service. *Id.* at 170. So email service on defendants in China is "prohibited by international agreement" and cannot be ordered under Rule 4(f)(3) when the Hague Convention applies to such a defendant. *Id.* at 172. The Seventh Circuit has expressly joined in the Second Circuit's analysis. *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793, 800 (7th Cir. 2026).

Plaintiff argues that cases of urgency can justify email service under Rule 4(f)(3) as an alternative. *Compare Smart Study*, 164 F.4th at 172, *with* Doc. 8 at 5 (citing *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. Nov., 18, 2016)). This court agrees with the Second Circuit's rejection of that argument because, as an international agreement within the meaning of Rule 4(f)(3), the Hague Convention prohibits email service in China. *Smart Study*, 164 F.4th at 172.

In any event, plaintiff has not shown any effort to effectuate formal service of process under the Hague Convention, as would support even a factual argument of undue delay. *See, e.g.*, *Bee Cups LLC v. Does 1–297*, No. 4:25-CV-00246, 2025 WL 2946083, at *3 (E.D. Tex. June 11, 2025) (rejecting same factual premise). Even if "it is highly likely that service via the" Hague Convention would be unsuccessful, "compliance with the Convention is mandatory" where it applies. *Smart Study*, 164 F.4th at 172 (citation modified).

**B. On this record, the Hague Convention applies**

If signed by a nation, the Hague Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad" but "shall not apply where the address of the person to be served

with the document is not known." Hague Convention art. 1. Whether an address is "not known" depends on the plaintiff's efforts to find it. Courts typically require diligent efforts to ascertain and verify the defendant's mailing address before treating an address as unknown under article 1. *Kangol*, 177 F.4th at 799.

Plaintiff represents that defendants are based in China. Doc. 8 at 3. China and the United States are each signatories of the Hague Convention. *See Chanel, Inc. v. Zhibing*, No. 2:09-cv-02835-cgc, 2010 WL 1009981, at *3 (W.D. Tenn. Mar. 17, 2010). Plaintiff's requested form of service, moreover, requires the transmittal of documents abroad: it will email the complaint and related documents to defendants, who are allegedly located in China. So unless defendants' addresses are unknown, the Hague Convention applies, and plaintiff should attempt service through China's central authority or other means permitted by the Convention.

Plaintiff argues that defendants primarily use electronic communications to operate their businesses and communicate with customers and third-party sales platforms. Doc. 8 at 3. That answers the wrong question. Conducting business online and communicating mainly by email bear on whether email is reasonably calculated to give notice under Rule 4(f)(2) or (3) and the Due Process Clause as interpreted in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It says nothing about whether any defendant's physical address is known. And only that question controls whether the Convention applies here.

A defendant may do business entirely by email and still have a physical address that is known or discoverable with diligence. For example, in a recent Second Circuit case, the plaintiff obtained from Amazon the China-based defendants' addresses, which even plaintiff's local counsel acknowledged may be accurate. *Smart Study*, 164 F.4th at 172 (holding email service prohibited by the Hague Convention). Likewise, online marketplaces supplied the defendants' addresses upon request in a recent Fifth Circuit case.

*Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *1 (5th Cir. Feb. 14, 2022) (per curiam) (unpublished).

Diligent efforts to find a defendant's address include more than just stating the difficulty of the endeavor. In *Kangol*, the plaintiff at least represented that it was "very difficult" to determine the defendants' locations because vendors selling goods that would allegedly infringe trademarks in the United States "typically do not disclose reliable information about their identities and locations in connection with their online storefronts." 177 F.4th at 796. But the defendant argued that its address was known and easily available. *Id.* at 799. So the Seventh Circuit remanded to decide the open question by evaluating the diligence of the plaintiff's efforts. *Id.*

Plaintiff has put forth no evidence that it could not find defendants' Chinese addresses despite diligence. So plaintiff has not established this exception to the Hague Convention's application.

**C. No authorities require a different result**

No binding decision controls this question in the Fifth Circuit, and plaintiff's cited nonbinding decisions are not persuasive.

**1. *Nagravision***

The court first explains why language in one precedential Fifth Circuit opinion does not control the decision here. In *Nagravision SA v. Gotech International Technology Ltd.*, 882 F.3d 494 (5th Cir. 2018), a Chinese defendant ignored the suit and the resulting default judgment. The defendant appeared only after the plaintiff froze its assets abroad; it moved to vacate the judgment under Rule 60(b)(4). *Id.* at 496–97.

On the service question, the Fifth Circuit stated: "Service here was court-ordered email service under Rule 4(f)(3), and Gotech has not shown that such service is prohibited by international agreement. Service was therefore proper." *Id.* at 498. The court added that Gotech, "[o]verlooking Rule 4(f)(3) entirely," had argued only that service did not comply with the Hague Convention and Rule 4(f)(1). That argument "misse[d] the mark"

because service had not been made under the Convention, and the Convention "does not displace Rule 4(f)(3)." *Id.*

*Nagravision* does not require email service here for two reasons. First, *Nagravision* confronted a record in which the district court had already authorized email service under Rule 4(f)(3), and the briefing did not take issue with whether the Convention's approved methods excluded such means of service. The Fifth Circuit's point was precisely that the issue was not joined. The Fifth Circuit has itself described *Nagravision* as "concluding court-ordered email service pursuant to Rule 4(f)(3) was proper when defendant made no showing it was prohibited by international agreement." *Viahart*, 2022 WL 445161, at *3.

The exclusivity argument adopted in *Smart Study* and *Kangol* thus was not presented in *Nagravision*. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925). At least one district court in this circuit has thus concluded that *Nagravision* "does not . . . answer the question of whether service by email is prohibited by international agreement." *UOP LLC v. Industria del Hierro SA de CV*, No. 2:22-cv-01089, 2022 WL 2056363, at *4 n.1 (W.D. La. June 7, 2022).

Second, as other district courts have pointed out, service as directed by the district court in *Nagravision* may have been compliant with article 15 of the Hague Convention due to six months' lapse after China's central authority was requested to serve the Chinese defendant. *See id.*; *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 413 (N.D. Tex. 2020). Here, by contrast, plaintiff has not identified any attempt to effectuate service of process under the Hague Convention or argued compliance with the Convention.

**2. District court decisions**

Some district courts have found that email service on Chinese defendants is not prohibited by international agreement. *E.g.*, *Sino Star Glob. Ltd. v. Shenzhen Haoqing Tech. Co.*, No. 4:22-cv-00980,

2023 WL 2759765, at *2 (E.D. Tex. Apr. 3, 2023); *Jackson Lab'y v. Nanjing Univ.*, No. 1:17-cv-00363, 2018 WL 615667, at *4 (D. Me. Jan. 29, 2018) (collecting cases). Those decisions do not bind here and have limited persuasive weight because they predate *Smart Study*'s thorough analysis.

Accordingly, the court denies the motion for email service under Rule 4(f)(3).

## II. Personal jurisdiction

A court may not enjoin a party, or restrain its assets, without personal jurisdiction over that party. "[T]he district court must have both subject matter jurisdiction and in personam jurisdiction over the party against whom the injunction runs." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985) (citation modified). When jurisdiction is in question at the preliminary stage, the plaintiff must establish "at least a reasonable probability of ultimate success upon the question of jurisdiction." *Id.* at 471 (citation modified).

The Fifth Circuit has held that a preliminary injunction requires notice, not completed service, so a court need not wait for Hague Convention service to finish before granting relief. *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 541–42 (5th Cir. 2023). But *Whirlpool* distinguished *Enterprise* on the basis that the defendant there disputed jurisdiction, while the *Whirlpool* defendant conceded that jurisdiction could be exercised once service was complete. *Id.* This case is different in both respects. No defendant has notice, and no filing concedes jurisdiction. So the court must decide for itself whether plaintiff has made the required showing.

That inquiry is likely to matter here. Defendants in Schedule A cases "now regularly appear to contest . . . jurisdiction," often successfully. *Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* 794 F. Supp. 3d 543, 547 (N.D. Ill. 2025). An ex parte order resting on a jurisdictional premise that later fails would restrain parties that the court had no power to restrain.

### A. Governing standard

To determine whether the court has personal jurisdiction, the court asks whether the forum state's long-arm statute reaches the defendant and whether jurisdiction comports with due process. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). Texas's long-arm statute extends to the limits of due process, so the two inquiries merge. *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013).

Plaintiff does not contend that any defendant is subject to general jurisdiction in Texas. Specific jurisdiction must rest on contacts that "the defendant himself creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation modified). And that showing must be made for each defendant, as the "requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

### B. Online storefronts and completed sales

The Supreme Court has reserved the question of what "virtual" contacts suffice. *Walden*, 571 U.S. at 290 n.9. This court need not resolve it here. Even the approaches most favorable to Schedule A plaintiffs rely on a completed sale of an accused product into the forum. As explained below, the record here shows no such sales by any defendants.

The Seventh Circuit, for example, has upheld jurisdiction over a China-based online seller that filled an order from an Illinois address and shipped an allegedly infringing product to it. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624–27 (7th Cir. 2022). But the same court has since vacated a Schedule A default judgment where the record showed no completed sale into Illinois. It explained that "merely operating a website, even a highly interactive website," that is accessible from but does not target the forum "is not enough to sustain jurisdiction." *Liu v. Monthly*, 170 F.4th 1090, 1093 (7th Cir. 2026) (citation modified). Checkout-page screenshots showing that a product could be shipped to the forum did not suffice. *See id.* at 1093–94. Those decisions mark

the floor of even the relatively permissive view of jurisdictional allegations.

**C. Plaintiff's showing**

Plaintiff's motion asserts that defendants "have sold and shipped" accused products "to Texas residents within the State" and "have directed their activities at Texas." Doc. 12 at 6–7. The only evidence the motion offers for those assertions are screenshots of Amazon checkout pages listing an address in Plano, Texas, which is within this district, but no completed purchases. Doc. 5-3. Pages showing that a product could be shipped to the forum do not establish a sale into it. *See Liu*, 170 F.4th at 1093.

What plaintiff identifies are the defendants themselves: storefronts on Amazon. Doc. 5-1. Those are sales channels open to buyers nationwide. That they can be reached from Texas, as from every other state, does not show that any of the defendants created a contact with Texas. *See Walden*, 571 U.S. at 284; *Liu*, 170 F.4th at 1093.

**D. Asset restraint and jurisdiction over defendants**

Plaintiff's proposed order would bar defendants from "transferring or disposing of any money held by a Third Party Provider until further ordered by this Court." Doc. 13-1 ¶ 4. It would have also directed "any Third Party Providers, including PayPal, eBay, TEMU, Shein, Alipay, Alibaba, Ant Financial, Walmart, Target, and Amazon Pay," to identify and restrain "any . . . accounts or funds" associated with the storefronts, or with accounts later identified in discovery, within 10 business days. *Id.* ¶ 5; *see also id.* ¶¶ 2–3 (ordering the same nonparties to produce discovery and to "disable and cease displaying any advertisements used by or associated with" defendants). Those nonparties are not parties to this action. To the extent the proposed order would have been binding on the platforms directly, apart from any relationship to defendants, it would still have adjudicated defendants' interests in their own property without jurisdiction over them. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110–12 (1969). In any event,

plaintiff has withdrawn the parts of the temporary restraining order motion that would bind these nonparties. Doc. 17 at 2.

Nor can the location of defendants' funds substitute for jurisdiction over defendants. First, plaintiff has not shown where those funds are held. Second, even if the funds were in this judicial district, "[i]njunctions bind people, not property, so *all* injunctions require *in personam* jurisdiction." *SEC v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 292 (5th Cir. 2024) (emphasis in original). The All Writs Act, which authorizes writs "in aid of" a court's jurisdiction, 28 U.S.C. § 1651(a), does not create jurisdiction that the court otherwise lacks.

**E. Post-relief discovery and conclusion**

On this record, plaintiff has not shown a reasonable probability that the court has personal jurisdiction over the Amazon storefronts. The motion for a temporary restraining order and asset restraint is denied on that ground.

Plaintiff initially sought expedited discovery of defendants' contact, sales, and financial-account information. Doc. 12 at 16–17. The proposed order would have required every third party with notice of the order who is providing services for any of the defendants to produce those materials within 10 business days. Doc. 13-1 ¶ 2. However, plaintiff later withdrew its requests to bind nonparties. Doc. 17 at 2. Still, plaintiff requested leave to conduct limited, expedited discovery related to defendants' contact information. *Id.* (citing Doc. 12 at 16–17).

Discovery showing sales of accused products into Texas could bear on jurisdiction. But ex parte relief must rest on the showing made when that relief is sought, and plaintiff proposes to obtain the records only after the restraining order issues. *See* Doc. 12 at 16–17. Plaintiff also seeks the discovery not through subpoenas but as a term of the restraining order itself, directed at nonparties, or pursuant to an order granting discovery as framed in the temporary restraining order motion. That form of relief depends on personal jurisdiction that plaintiff has not shown.

The court's denial of the restraining order does not foreclose narrower discovery. If plaintiff believes that a platform's records would show sales of accused products shipped to Texas, it may move for leave to serve targeted subpoenas for that limited purpose. *See* Fed. R. Civ. P. 26(d)(1), 45.

**III. Joinder of multiple defendants**

Schedule A cases often join dozens or hundreds of unrelated online sellers in a single action based on little more than their alleged infringement of the same intellectual property. Courts have increasingly rejected that practice. *See Eicher Motors*, 794 F. Supp. 3d at 556. In patent cases, joinder of accused infringers is governed by statute. Accused infringers may be joined as defendants "only if" (1) the right to relief against them arises "out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process," and (2) "questions of fact common to all defendants . . . will arise in the action." 35 U.S.C. § 299(a). Accused infringers "may not be joined . . . based solely on allegations that they each have infringed the patent or patents in suit." *Id.* § 299(b).

The concern that can arise with Schedule A joinder in other cases is not present here because plaintiff does not sweep together unrelated sellers. It sues sales channels allegedly operating together under one operation. Doc. 12 at 2. Plaintiff supports the connection among the defendants with allegations beyond the alleged infringement itself: use of the same or similar advertising look and feel, product images and descriptions, and tactics to evade enforcement efforts. Doc. 1 at 7–8. On plaintiff's theory, its claims against each defendant arise from the sale of the same accused products by the same operation and will present common questions of fact. That satisfies § 299(a) at this stage.

Joinder, however, does not establish jurisdiction. Whether defendants may be sued together is a separate question from whether each may be sued here. And the relationships among defendants do not supply any defendant's contacts with Texas.

## IV. Fair notice and nonpublic filings

Plaintiff moved (Doc. 4) to seal all attachments to its complaint, including the Schedule A list of the seller identifications and URL links associated with defendants' Amazon stores, the claim chart, the product identification numbers of accused products, and screenshots of Amazon checkout pages. Docs. 5-1, 5-2, 5-3. It also filed its motion for a temporary restraining order and supporting exhibits under seal. Doc. 11. The sole justification offered is that public filing would allow defendants "to learn of these proceedings prematurely," which would frustrate enforcement. Doc. 4 at 2; Doc. 11 at 1.

### A. Governing standard

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). So "the working presumption is that judicial records should not be sealed." *Id.* at 419 (citation modified). The court must then conduct a "document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure," *id.* (citation modified), and consider less drastic alternatives such as redaction, *id.* at 420. The Fifth Circuit "heavily disfavor[s] sealing information placed in the judicial record." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519–20 (5th Cir. 2022).

### B. The justification for sealing has lapsed

Temporary sealing can serve a legitimate purpose in an ex parte proceeding. It can prevent a defendant from defeating relief before the court can act. But that justification lasts only as long as the application for ex parte relief is pending, and it ends once the court has ruled. The court has now denied the temporary restraining order and asset restraint. Now that the court has ruled, the public's interest in access extends to the ruling itself and to the record on which it rests. And no document sought to be sealed is claimed to contain confidential business information or personal information warranting protection.

Continued sealing would also undermine protections for defendants in the federal rules. A plaintiff may voluntarily dismiss an action without a court order before defendants answer. Fed. R. Civ. P. 41(a)(1)(A)(i). But the federal rules protect defendants against repeated litigation of the same claim: A second voluntary dismissal of the same claim operates as an adjudication on the merits. Fed. R. Civ. P. 41(a)(1)(B). And a court in which the claim is refiled may award the costs of the prior action and stay proceedings until they are paid. Fed. R. Civ. P. 41(d).

Those protections, and the related-case disclosures that courts require when a case is filed, depend on the prior action being discoverable. If this record remained sealed and the case were dismissed by plaintiff, neither defendants nor another court could readily learn that the claims had been asserted or that relief had been sought and denied. That concern is not hypothetical in Schedule A litigation. *See, e.g.*, *Crimpit Grp. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 0:25-cv-60756, slip op. at 4–6 (S.D. Fla. Sept. 23, 2025) (sanctioning counsel who voluntarily dismissed a sealed Schedule A case and refiled the identical complaint before a different judge, without disclosing the earlier case on the civil cover sheet). Public access now thus promotes sound judicial administration.

The motions to seal are denied. Any party may move to redact specific information from the public record. Such a motion must identify each proposed redaction and explain why it is warranted. *See Binh Hoa Le*, 990 F.3d at 419–20.

**C. Notice under Rule 65(b)(1)(B)**

Independently of sealing, a restraining order may issue without notice only if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Plaintiff's counsel certifies no efforts to give notice.

The reasons offered for proceeding without notice are generic. Plaintiff says only that defendants "can and likely will take

immediate steps to permanently alter the status quo, including but not limited to steps such as registering new e-commerce stores under new aliases and moving any assets to offshore bank accounts outside the jurisdiction of this Court." Doc. 12 at 5. Nothing in the record describes anything these defendants have done to suggest they would dissipate assets or evade an order.

The absence of a specific certification independently justifies denial of plaintiff's motion for an ex parte TRO. *See Eicher Motors*, 794 F. Supp. 3d at 551.

**V. Binding nonparty platforms under Rule 65**

Plaintiff's proposed order would have required nonparties, "including . . . any online marketplace platforms[,]" to do three things: produce discovery within 10 business days, "disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of the Infringing Products," and identify and freeze accounts and funds. Doc. 13-1 ¶¶ 2, 3, 5. In response to the court's request for briefing, Doc. 16, plaintiff withdrew its request to bind nonparty platforms. Doc. 17 at 1–2. In lieu of an order binding the nonparty platforms, plaintiff requested "leave to conduct limited[,] expedited discovery that is narrowly tailored in scope to yield information relating to Defendants' contact information[.]" *Id.* at 2.

As noted above, discovery from nonparties is available by subpoena under Rule 45. To the extent that plaintiff asks the court to direct any nonparty to produce discovery, the motion is denied.

**VI. Likelihood of success on the merits**

A temporary restraining order is an extraordinary remedy. It requires a showing that plaintiff is likely to succeed on the merits, likely to suffer irreparable harm absent relief, and entitled to relief under the balance of the equities and the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008).

Federal Circuit law governs the likelihood-of-success inquiry in a patent case. The patentee must show, in light of the presumptions and burdens that will inhere at trial, that it will likely prove

infringement and that its infringement claim will likely withstand challenges to validity. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Ordinarily, an accused infringer can defeat preliminary relief by raising a "substantial question" of infringement or validity. *Id.* at 1350–51. But, here, no defendant is present to do so. That makes it all the more important that the court at least attempt to test plaintiff's showing on its own terms—and make its assessment of likelihood of success with eyes wide open to the limitations of a one-sided presentation.

**A. Claim 1**

Plaintiff argues that defendants' accused-products infringe at least Claim 1 of its patent. Doc. 12 at 8. But Plaintiff relies on only a three-page "exemplary" claim chart. Doc. 5-2. The claim chart features only a single unidentified product, which plaintiff alleges—with no declaration, affidavit, or legal analysis—is "representative of all of the Infringing Products identified in Schedule A". *Id.* at 1 n.1. The photographs of the unidentified product contain a few labels purporting to identify only a lamp, with its conducting-wires, light-emitting components, conductor and insulating layers, plurality of openings, and conductor-contact surfaces. *Id.* at 1–3. This is facially insufficient to establish a likelihood of success on the merits where the limitations of Claim 1 are far more substantial than the limited number of identified details in each photo. In fact, plaintiff's showing is scarcely more than the screenshot-only presentations that have drawn criticism in other Schedule A cases. *See Eicher Motors*, 794 F. Supp. 3d at 554.

These contentions would also be deficient under Local Patent Rule 3-1. "Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005). The local patent rules require the plaintiff to list "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party." Local Patent Rule 3-1. The listing must include, "separately for each asserted claim, each accused apparatuses . . . of each

opposing party of which the party is aware. This identification shall be as specific as possible." *Id.* While the court notes the ex parte posture of this motion and the lack of a party on whom to serve proper contentions under Rule 3-1, the court cannot comprehend how a chart exemplifying a mere "perfunctory submission" can be said to show a likelihood of success on the merits. *See Connectel, LLC*, 391 F. Supp. 2d at 528.

The chart refers to "Defendant #10 Infringing Product" in the singular, and it does not say which listing the photographed product came from or how plaintiff examined it. *See* Doc. 1 at 8; Doc. 5-2 at 1 n.1. But plaintiff accuses 14 separate products of infringement. Doc. 5-1. Nothing in the record shows that each accused product contains the structure depicted in the chart, except for plaintiff's assertion that they are "identical . . . in all aspects relevant to the [patent] claims." Doc. 5-2 at 1 n.1.

The chart's entries restate the claim language without explaining how the photographed structure meets each limitation. For example, the entry for the third limitation states that the "corresponding conductor contact surfaces of the two conducting wires form[s] a conductor contact surface group[.]" Doc. 5-2 at 3. That largely repeats the limitation itself. Plaintiff also offers no proposed construction of terms such as "conductor contact surface group" or "transparent encapsulation layer." Those terms may matter in comparing the accused structure to the claims.

All of this is insufficient, as the court cannot find a likelihood of proving infringement without being privy to "notice of infringement beyond that which is provided by the mere language of the patent claims themselves." *Connectel, LLC*, 391 F. Supp. 2d at 528 (citation modified). "[S]imply mimicking the language of the claims when identifying infringement" fails to establish even reasonable notice of plaintiff's theories of infringement, and it is certainly insufficient to find a likelihood of success on the merits. *See id.*

Finally, plaintiff's validity showing consists largely of the statutory presumption, in addition to its asserted "significant

commercial success with its patented product." Doc. 12 at 9; *see* 35 U.S.C. § 282. That presumption does carry weight at this stage. But on an ex parte record, the court has no way to assess prior art or other validity challenges a defendant might raise.

### B. Scope of the showing

Charitably, therefore, plaintiff has made a preliminary showing that the single product photographed in its claim chart likely meets the limitations of claim 1 and no patent-specific showing as to its likely validity.

But plaintiff's proposed order would enjoin defendants from "making, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Products," from "aiding, abetting, contributing to, otherwise assisting anyone in" infringing the patent, and from "effecting assignment or transfer, forming new entities or associations, or utilizing any other device for the purpose of circumventing" those restrictions. Doc. 13-1 ¶ 1. This request does not align it with plaintiff's showing. The product identifiers listed in the motion cover some 14 listings. Doc. 5-1. Plaintiff has not shown a likelihood of infringement as to any of them.

An order granting injunctive relief must "describe in reasonable detail" the acts restrained. Fed. R. Civ. P. 65(d)(1)(C). This court's order regulating practice confirms that requirement. Doc. 14 at 4, note. The merits showing here would not support relief for even the charted product and claim 1.

## VII. Justification and equities of prejudgment asset restraint

The ex parte posture of the requested restraint on defendants' assets is a further reason to deny it.

### A. Link between targeted assets and alleged infringement

Plaintiff asks the court to freeze defendants' assets before any judgment. The proposed order would bar defendants from "transferring or disposing of any money held by a Third Party Provider until further ordered by this Court." Doc. 13-1 ¶ 4. Plaintiff's supplemental brief describes its requested relief as limited "to

restrain[ing] those product listings that feature the accused products," Doc. 17 at 2. But the brief does not withdraw paragraph 4 of the proposed order. To the extent plaintiff still seeks an asset restraint, that relief is unavailable.

First, this court has already explained that, because a utility patent plaintiff's monetary remedy is legal damages, a federal court lacks authority to freeze a defendant's assets to preserve that remedy. *See* Doc. 16 (holding such relief foreclosed under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)).

Second, even in cases where an equitable accounting is available, an asset freeze preserves only assets that may be needed to satisfy that equitable relief. But the proposed order would bar defendants from transferring "any money held by a Third Party Provider," without regard to location, amount, or source. Doc. 13-1 ¶ 4. Plaintiff now concedes that defendants may continue selling non-accused products. Doc. 17 at 2. Yet the proposed order on file would reach the proceeds of those very sales. And it would freeze all funds associated with defendants' storefronts and with any other accounts later identified. Doc. 13-1 ¶ 5.

Plaintiff offers no evidence of the volume of accused-product sales, and no basis for estimating what portion of any frozen funds might derive from them. The requested freeze would thus restrain defendants' entire business to secure a claim for damages that plaintiff has not attempted to quantify.

**B. Impairment of the right to defend**

"[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 439 (1974). An ex parte order must therefore be limited to "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*

The requested freeze would do more than preserve the status quo. Defendants would first learn of this suit when their accounts were frozen. The freeze would reach "any money held by a Third Party Provider," Doc. 13-1 ¶ 4, including the proceeds of products that plaintiff concedes defendants may keep selling. Doc. 17 at 2. Such a freeze "locks down defendants' assets" and can cause "severe or fatal cash-flow problems for the defendant, which may not be able to pay its vendors, employees, or lawyers." *Eicher Motors*, 794 F. Supp. 3d at 553 (quoting Eric Goldman, *A Sad Scheme of Abusive Intellectual Property Litigation*, 123 Colum. L. Rev. F. 183, 191 (2023)). A defendant "faced at the outset with the specter of a secretly-imposed asset restraint starts the game backed up against [its] own end zone." *Id.* at 552. The resulting pressure can force settlements from defendants who "might otherwise prefer to litigate the case but cannot do so because their assets and business are locked up." *Id.* at 555.

Those concerns are acute here. Plaintiff's proposed order would allow defendants to move to dissolve the order. Doc. 13-1 ¶ 10. But a foreign business whose funds are frozen must still retain United States counsel before it can contest this court's jurisdiction. And Part II above explains that jurisdiction over defendants is doubtful. Without defendants' participation, moreover, the court has no reliable way to weigh the harm that the freeze would cause them or plaintiff's likelihood of success in overcoming any invalidity or noninfringement defense. *See Eicher Motors*, 794 F. Supp. 3d at 555. An asset restraint that impairs a defendant's ability to answer the claims against it is not a measure that preserves the status quo pending a hearing. It is a measure that may prevent a hearing from ever occurring. That weighs heavily against ex parte relief in the balance of the equities and the public interest. *Id.*

The request for an asset restraint is denied.

## VIII. Injunction bond for potential harm to defendants

Although often neglected, Rule 65 provides that a court may issue a preliminary injunction or a temporary restraining order

"only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount is a matter for the discretion of the trial court. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). But, at its core, that discretion must be exercised to set an amount that is proper to cover the harm that a restraint would cause if later found to be wrongful. Fed. R. Civ. P. 65(c).

Plaintiff proposes a $10,000 deposit, which it describes as "adequate for the payment of such damages as any person may be entitled to recover as a result of a wrongful restraint hereunder." Doc. 13-1 ¶ 9. Plaintiff offers nothing to support that figure. The proposed order would freeze "any money held by a Third Party Provider" of 14 defendants, Doc. 13-1 ¶ 4. It would bar sales of some 14 product listings, *id.* ¶ 1. The court is not satisfied that a mere $10,000 injunction bond would properly compensate defendants in the event that the requested TRO, if entered, turns out to have been legally or factually improper.

Because the requested relief is denied on other grounds, the court sets no bond. Any renewed request for injunctive relief must support its proposed security with greater factual support bearing on the harm that the specific restraint sought could cause, and any defendant who has appeared in the action will be entitled to submit evidence of the proper bond amount.

**IX. Conclusion**

For the foregoing reasons, plaintiff's motion for alternative service by email (Doc. 8) and its ex parte motion for a temporary restraining order, asset restraint, and expedited discovery (Doc. 12) are denied. Although the request for expedited discovery as framed in the proposed order (Doc. 13-1 ¶ 2) is denied, plaintiff may move for leave under Rule 26(d)(1) to serve subpoenas under Rule 45 limited to records showing sales of accused products shipped to addresses in Texas. Plaintiff may also proceed with service of process on any foreign defendant under Rule 4(f)(1) and

the Hague Convention and on any domestic defendant under Rule 4(h)(1).

Plaintiff's motions to seal (Docs. 4, 11) are denied. The clerk is directed to unseal immediately this order and docket entries 4, 5, 5-1 through 5-3, 11, and 13. Any party may move to redact specific information from the public record. Such a motion must identify each proposed redaction and explain why it is warranted.

Plaintiff's motion for leave to file excess pages (Doc. 10) is granted.

*So ordered by the court on September 30, 2026.*

J. CAMPBELL BARKER
United States District Judge